JOEL S. SCHNECK
PORTNOY SCHNECK, L.L.C.
3705 Quakerbridge Road
Suite 116
Hamilton, New Jersey 08619
jss@thepslawfirm.com
(609)514-8668

NITIN GAMBHIR (SBN 259906)
LAW OFFICE OF NITIN GAMBHIR
Telephone: 310 486 7996
Email: nitin@nitingambhir.com
(Pending *Pro Hac Vice* Motion)

*Attorneys for Plaintiffs,*
*Myers Global Media Strategies LLC and*
*Michael Cain*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MYERS GLOBAL MEDIA STRATEGIES LLC, a Connecticut Limited Liability Company, and MICHAEL CAIN, an individual,**<br><br>Plaintiffs,<br>vs.<br><br>**POP WARNER LITTLE SCHOLARS, INC., a Pennsylvania Non-Profit Corporation,**<br><br>Defendant | CASE NO. _____<br><br>**COMPLAINT FOR DAMAGES FOR:**<br>(1) **Breach of Contract;**<br>(2) **Breach of the Implied Covenant of Good Faith and Fair Dealing;**<br>(3) **Declaratory Relief;**<br>(4) **Accounting;**<br>(5) **Quantum Meruit / Unjust Enrichment, in the Alternative; and**<br>(6) **Anticipatory Breach and Repudiation, in the Alternative**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Myers Global Media Strategies LLC ("Myers") and Michael Cain ("Cain") (collectively, "Plaintiffs") bring this action against Defendant Pop Warner Little Scholars, Inc. ("Pop Warner") allege as follows:

**INTRODUCTION**

1.      This is an action for unpaid commissions and related declaratory relief arising out of a consulting relationship between Plaintiffs and Defendant Pop Warner Little Scholars, Inc.

1

Complaint for Damages

2.     At the time that the parties entered into a Consulting Agreement, Pop Warner's representatives advised Plaintiffs that Pop Warner was experiencing substantial financial difficulties.

3.     Pop Warner retained Plaintiffs to assist with, among other things, the negotiation and development of venue, media-rights, and sponsorship relationships connected to Pop Warner's annual Super Bowl National Championship and related cheer and dance events.

4.     Plaintiffs performed. They helped originate, facilitate, negotiate, and/or materially advance valuable revenue-generating relationships for Pop Warner, including Pop Warner's relationship with Florida Citrus Sports Events, Inc. ("FCS"), its media-rights arrangement with FloSports, and discussions involving Brand Velocity Group.

5.     Pop Warner accepted the benefits of Plaintiffs' work for years and paid commissions consistent with the parties' agreement and course of performance.

6.     Pop Warner then attempted to terminate the consulting relationship while simultaneously keeping the revenue-generating relationships Plaintiffs helped create and refusing to pay Plaintiffs the ongoing compensation expressly preserved by the parties' agreement.

7.     The parties' written agreement is clear: compensation remains payable notwithstanding termination. Pop Warner cannot use termination as a device to avoid paying commissions on relationships Plaintiffs helped bring to Pop Warner and from which Pop Warner continues to derive revenue.

8.     The principal dispute concerns Pop Warner's relationship with Florida Citrus Sports Events, Inc. ("FCS"). Plaintiffs helped originate, facilitate, negotiate, and/or materially advance that relationship. The written FCS agreement provided for an initial term through the

Complaint for Damages

2025 event and expressly contemplated a further five-year continuation through an exclusive extension option.

9.      Plaintiffs are informed and believe, and on that basis allege, that shortly before, around the time of, or after Pop Warner's purported termination of Plaintiffs' consulting relationship, Pop Warner continued, renewed, extended, replaced, or otherwise carried forward its relationship with FCS while attempting to cut Plaintiffs out of the commissions that had been earned through Plaintiffs' work.

10.     Pop Warner's conduct reflects an improper attempt to retain the benefits of Plaintiffs' services while avoiding the compensation obligations that the parties' agreement expressly preserved. Pop Warner cannot defeat Plaintiffs' compensation rights by changing labels, restructuring paperwork, delaying execution, modifying deal terms, or claiming that a continued or successor FCS relationship is somehow disconnected from the relationship Plaintiffs helped create.

11.     Plaintiffs further seek declaratory relief regarding the Brand Velocity Group opportunity. Plaintiffs pursued that opportunity at Pop Warner's request. If Pop Warner later consummates, revives, closes, or benefits from a transaction with Brand Velocity Group, or related entities/persons based on the opportunity Plaintiffs developed, Plaintiffs are entitled to compensation under the agreement.

12.     Plaintiffs are informed and believe, and on that basis allege, that Pop Warner's refusal to pay commissions was not an isolated business dispute, but part of a broader pattern of opacity, misdirection, and bad-faith conduct by Pop Warner's senior leadership. For example, Plaintiffs raised concerns to the Chairman of the Board of  Pop Warner regarding misleading marketing materials and related business practices. Rather than address those concerns

Complaint for Damages

transparently and in good faith, Pop Warner's leadership acknowledged aspects of the problem but responded with intimidation and threats designed to silence further inquiry. That conduct is relevant to Pop Warner's pattern of concealment, its lack of transparency, and its willingness to pressure individuals who raise legitimate concerns regarding its business practices.

13.     Plaintiffs bring this action to recover unpaid commissions, obtain a judicial declaration of their continuing rights, compel an accounting of revenue which Pop Warner has received or will receive from the relevant relationships, and recover all other relief allowed by law.

## PARTIES

14.     Plaintiff Myers Global Media Strategies LLC is a Connecticut limited liability company with its principal place of business in Connecticut. Todd Myers is the principal of Myers Global Media Strategies LLC and performed services on behalf of Myers Global Media Strategies LLC.

15.     Plaintiff Michael Cain is an individual residing in Colorado.

16.     Todd Myers and Michael Cain are both respected sports media executives known for their expertise in negotiating media rights, marketing and sponsorship agreements.

17.     Defendant Pop Warner Little Scholars, Inc. is a Pennsylvania nonprofit corporation with its principal place of business in Langhorne, Pennsylvania.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Complaint for Damages

19.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, contractual performance, and/or injuries giving rise to Plaintiffs' claims occurred in this District, and/or because Defendant is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### A.    Pop Warner Retains Plaintiffs to Develop Venue, Media, and Sponsorship Opportunities

20.    In 2019 Pop Warner was experiencing serious financial difficulties.

21.    Plaintiffs were in contact with Pop Warner's representatives for the purposes of engaging Plaintiffs to assist in creating new value and revenue for Pop Warner.

22.    In or around July/August 2019, Pop Warner entered into a written Consulting Agreement with Myers and Cain.

23.    The Consulting Agreement states that Pop Warner wished to engage Plaintiffs to assist with negotiating venue agreements, media-rights agreements, and sponsorship agreements for Pop Warner's annual Super Bowl National Championship and related events.

24.    Plaintiffs agreed to devote time, skill, and effort to assist Pop Warner in achieving those objectives.

25.    Pop Warner agreed to compensate Plaintiffs by paying them commissions based on revenue increases and revenue streams associated with commissionable events, venue arrangements, media-rights arrangements, and sponsorship arrangements.

26.    The Consulting Agreement provided that Plaintiffs were entitled to receive 15% of the relevant net revenue increase recognized by Pop Warner from commissionable events as compared to the applicable base year.

Complaint for Damages

27.     The Consulting Agreement also addressed sponsorship arrangements and provided for compensation relating to new sponsorships and sponsorship agreements accepted by Pop Warner.

28.     Critically, the Consulting Agreement expressly provided that compensation remained payable notwithstanding termination.

29.     The parties later executed amendments in or around June 2020 and June 2021. Plaintiffs are informed and believe, and on that basis allege, that those amendments did not remove or modify Pop Warner's obligation to pay compensation notwithstanding termination.

30.     Through the parties' course of performance, Pop Warner repeatedly acknowledged Plaintiffs' right to compensation by paying commissions on revenue-generating relationships Plaintiffs helped facilitate.

### B.     *Plaintiffs Help Facilitate the FCS Relationship*

31.     FCS operates and/or coordinates major sports-event opportunities in the Orlando, Florida market, including event-related venue, travel, package, sponsorship, and operational opportunities.

32.     In or around January 2021, Pop Warner and FCS entered into a written Event Agreement relating to Pop Warner's annual Super Bowl National Championship and related cheer and dance events.

33.     The FCS agreement covered the period beginning August 1, 2020 and running through December 31, 2025, unless earlier terminated.

34.     The FCS agreement further provided that FCS retained the exclusive option to renew the agreement on the same terms and conditions for an additional five-year period following the 2025 event.

6

Complaint for Damages

35. Plaintiffs' work was a substantial factor in creating, facilitating, negotiating, and/or preserving the Pop Warner-FCS relationship.

36. Pop Warner received substantial value from the FCS relationship, including but not limited to venue access, event-related revenue, package revenue, sponsorship-related opportunities, hospitality, operational support, and other commercial benefits.

37. From 2021 through 2024, Pop Warner paid Plaintiffs substantial commissions relating to the FCS relationship and related event revenue, thereby confirming Pop Warner's understanding that Plaintiffs were entitled to compensation for that relationship.

38. Plaintiffs are informed and believe, and on that basis allege, that Pop Warner purported to terminate Plaintiffs' consulting relationship shortly before, around the time of, or in close proximity to the continuation, renewal, extension, replacement, or restructuring of the FCS relationship.

39. Plaintiffs are further informed and believe, and on that basis allege, that Pop Warner timed the purported termination in an effort to avoid paying Plaintiffs commissions on FCS-related revenue that Plaintiffs had earned and that Pop Warner knew, or should have known, remained payable notwithstanding termination.

40. Pop Warner has failed and refused to provide Plaintiffs with the operative post-2025 FCS agreement, renewal, extension, amendment, replacement agreement, successor agreement, or other documents sufficient to determine the full amount of FCS-related revenue, benefits, consideration, or substituted consideration Pop Warner has received or will receive.

41. Plaintiffs' compensation rights are tied to the relationship, opportunity, and revenue stream Plaintiffs helped create and facilitate, not to Pop Warner's unilateral relabeling, restructuring, renewal, replacement, amendment, or modification of the underlying paperwork.

Complaint for Damages

42.    Pop Warner cannot avoid commissions by changing terms, using a successor or replacement agreement, amending revenue mechanics, delaying execution, moving revenue or consideration to an affiliate, restructuring consideration, or otherwise altering the form of the FCS relationship while continuing to benefit from the same relationship Plaintiffs facilitated.

43.    Plaintiffs seek a declaration that they are entitled to compensation for all FCS-related revenue, consideration, benefits, and/or substitutes for revenue received by Pop Warner, its affiliates, successors, or related entities, including under any renewal, extension, amendment, successor agreement, replacement agreement, modified agreement, or substantially similar arrangement with FCS.

### C.    *Pop Warner Also Owes FloSports-Related Commissions*

44.    Plaintiffs also materially contributed to Pop Warner's media-rights relationship with FloSports.

45.    At the direction of Pop Warner representatives, including Jon Butler and Wynn Jessup, Plaintiffs negotiated, facilitated, and/or materially assisted with the FloSports media-rights arrangement.

46.    Plaintiffs are informed and believe, and on that basis allege, that Pop Warner received and/or will receive revenue and/or other consideration from FloSports for 2024, 2025, 2026, 2027, and related foundation/donation components.

47.    Under the parties' agreement and course of performance, Plaintiffs are entitled to 15% of covered FloSports revenue and related amounts.

48.    Pop Warner has failed and refused to pay Plaintiffs all amounts owed in connection with the FloSports relationship, including commissions on covered revenue and related consideration.

Complaint for Damages

49. Plaintiffs therefore seek damages, declaratory relief, and an accounting for all FloSports-related revenue, consideration, donations, foundation-related payments, or other benefits on which Plaintiffs are entitled to compensation under the Consulting Agreement and the parties' course of performance.

**D.  Pop Warner Must Preserve Plaintiffs' Rights in The Brand Velocity Group**

50. At Pop Warner's request, Plaintiffs pursued a multi-year strategic partnership involving Brand Velocity Group.

51. Plaintiffs invested time, effort, industry relationships, strategy, and goodwill in pursuing that opportunity for Pop Warner.

52. By spring 2025, Plaintiffs understood that the Brand Velocity Group opportunity was ready to move forward or substantially advanced.

53. Pop Warner's then-leadership delayed or failed to proceed with the opportunity before attempting to terminate Plaintiffs.

54. Plaintiffs are informed and believe, and on that basis allege, that if Pop Warner later consummates, revives, closes, or benefits from a transaction with Brand Velocity Group, or related parties based on the opportunity Plaintiffs developed, Plaintiffs are entitled to compensation under the Consulting Agreement.

55. A present controversy exists because Pop Warner has disputed or failed to acknowledge Plaintiffs' continuing compensation rights with respect to that opportunity.

**E.  Pop Warner's Lack of Transparency and Broader Pattern of Bad-Faith Conduct**

56. Plaintiffs are informed and believe, and on that basis allege, that Pop Warner's refusal to pay commissions is consistent with a broader course of conduct in which Pop Warner

Complaint for Damages

accepts the benefits of others' work, withholds material information, and then attempts to avoid accountability once questioned.

57. For example, Plaintiffs raised concerns to Pop Warner's senior leadership regarding blatantly misleading marketing materials including grossly inflated participation numbers, and related business practices.

58. Plaintiffs are informed and believe, and on that basis allege, that Wynn Jessup, Pop Warner's Chairman of the Board of Directors, acknowledged aspects of those concerns, but rather than address them through transparency, correction, or good-faith dialogue, responded with threats of physical violence and other intimidating statements intended to shut down further discussion.

59. Plaintiffs' misleading-marketing concerns are directly relevant to Pop Warner's course of conduct, lack of transparency, motive, intent, credibility, and willingness to pressure individuals who raise legitimate concerns regarding Pop Warner's business practices.

60. Pop Warner's conduct further supports Plaintiffs' need for declaratory relief and an accounting because the relevant agreements, revenue information, payment calculations, and post-2025 FCS-related documents are uniquely within Pop Warner's possession, custody, or control.

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**
### **(Breach of Contract)**
### *(By All Plaintiffs Against Defendant)*

61. Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 60, inclusive, as though fully set forth herein.

Complaint for Damages

62.    Plaintiffs and Pop Warner entered into a valid and enforceable Consulting Agreement.

63.    Plaintiffs performed, substantially performed, or were excused from further performance.

64.    Plaintiffs performed valuable consulting services, including services relating to venue, media-rights, sponsorship, and commercial relationships.

65.    Pop Warner accepted and benefited from Plaintiffs' services.

66.    Pop Warner was obligated to compensate Plaintiffs pursuant to the Consulting Agreement, including by paying commissions on covered revenue and revenue increases.

67.    Pop Warner was further obligated to pay compensation notwithstanding termination.

68.    Pop Warner breached the Consulting Agreement by, among other things:

a.    Failing and refusing to pay commissions owed in connection with the FCS relationship;

b.    Failing and refusing to pay commissions owed for the 2025 event and post-2025 continuation, renewal, extension, replacement, or successor FCS arrangements;

c.    Failing and refusing to provide information necessary to calculate Plaintiffs' commissions;

d.    Failing and refusing to pay all FloSports-related commissions and amounts;

e.    Repudiating Plaintiffs' rights to compensation notwithstanding termination;

Complaint for Damages

f.   Attempting to avoid commissions by terminating Plaintiffs while continuing to benefit from relationships, revenue streams, and commercial opportunities Plaintiffs helped create, facilitate, negotiate, and/or materially advance; and

g.   Failing to preserve or acknowledge Plaintiffs' compensation rights relating to Brand Velocity Group.

69.   As a direct and proximate result of Pop Warner's breaches, Plaintiffs have suffered damages in an amount to be proven at trial, but believed to exceed $1,000,000, plus interest, costs, and attorneys' fees.

70.   Plaintiffs are also entitled to attorneys' fees under Section 6 of the Consulting Agreement and/or applicable law.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
### *(By All Plaintiffs Against Defendant)*

71.   Plaintiffs incorporate by reference paragraphs 1 through 70 as though fully set forth herein.

72.   Every contract imposes a duty of good faith and fair dealing, requiring that neither party do anything to unfairly interfere with the other party's right to receive the benefits of the agreement.

73.   Plaintiffs had the contractual right to receive compensation for covered revenue, revenue increases, and opportunities Plaintiffs helped create, including compensation payable notwithstanding termination.

74.   Pop Warner breached the implied covenant by unfairly interfering with Plaintiffs' contractual rights, including by:

Complaint for Damages

a.  Purporting to terminate the consulting relationship while continuing to benefit from Plaintiffs' work;

b.  Withholding revenue information, agreements, and payment calculations necessary to determine Plaintiffs' commissions;

c.  Recharacterizing, restructuring, modifying, delaying, or relabeling the FCS relationship in an effort to avoid paying Plaintiffs;

d.  Taking the position, whether expressly or by conduct, that Plaintiffs' compensation rights can be defeated by changes in form, timing, structure, or paperwork;

e.  Delaying, failing to disclose, or failing to proceed transparently with opportunities Plaintiffs developed;

f.  Refusing to acknowledge Plaintiffs' rights relating to Brand Velocity Group; and

g.  Engaging in threatening or pressure-based conduct when Plaintiffs raised legitimate concerns regarding Pop Warner's blatantly misleading marketing materials and related business practices, further demonstrating Pop Warner's lack of transparency and bad faith.

75.  Pop Warner's conduct deprived Plaintiffs of the benefits of the Consulting Agreement.

76.  Plaintiffs have suffered damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief)**
***(By All Plaintiffs Against Defendant)***

Complaint for Damages

77. Plaintiffs incorporate by reference paragraphs 1 through 76 as though fully set forth herein.

78. An actual and present controversy exists between Plaintiffs and Pop Warner concerning the parties' rights and obligations under the Consulting Agreement.

79. Plaintiffs contend that they are entitled to compensation for the 2025 event and for all post-2025 FCS-related revenue, benefits, consideration, and substitutes for such revenue received by Pop Warner, including under any renewal, extension, successor agreement, replacement agreement, modified agreement, or substantially similar arrangement with FCS.

80. Pop Warner has disputed, failed to acknowledge, or refused to honor Plaintiffs' continuing compensation rights.

81. Plaintiffs contend that Pop Warner cannot avoid compensation by changing contractual form, modifying terms, delaying execution, routing revenue or benefits through affiliates, withholding agreements, or otherwise continuing to benefit from the same commercial relationships while denying Plaintiffs compensation.

82. Plaintiffs seek a judicial declaration that:

a. Plaintiffs are entitled to compensation notwithstanding termination;

b. Plaintiffs are entitled to compensation for the 2025 Pop Warner Super Bowl and Cheer & Dance Nationals and all other covered events for which Pop Warner receives covered revenue;

c. Plaintiffs are entitled to compensation for Pop Warner's FCS-related revenue, consideration, benefits, and substitutes for revenue, including under any continuation, renewal, extension, amendment, successor, replacement, modified, or substantially similar arrangement;

14

Complaint for Damages

d. Pop Warner must disclose revenue and contract information necessary to calculate Plaintiffs' commissions;

e. Plaintiffs are entitled to FloSports-related compensation, including all unpaid amounts owed under the Consulting Agreement and the parties' course of performance;

f. If Pop Warner consummates, revives, closes, renews, or benefits from any transaction with Brand Velocity Group, or related entities/persons based on opportunities Plaintiffs developed, Plaintiffs are entitled to compensation under the Consulting Agreement;

g. Pop Warner may not defeat Plaintiffs' rights by delaying, restructuring, modifying, or papering a transaction after termination; and

h. Plaintiffs are entitled to attorneys' fees and costs as provided by contract and law.

83. A judicial declaration is necessary and appropriate to resolve the parties' present dispute and prevent further harm.

## FOURTH CAUSE OF ACTION

### (Accounting)
### *(By All Plaintiffs Against Defendant)*

84. Plaintiffs incorporate by reference paragraphs 1 through 83 as though fully set forth herein.

85. The number of commissions owed to Plaintiffs depends on revenue, consideration, benefits, and related financial information in Pop Warner's possession, custody, or control.

Complaint for Damages

86.    Pop Warner has superior knowledge and control of relevant information, including FCS-related agreements, post-2025 renewal or successor agreements, revenue statements, settlement statements, payment records, FloSports agreements, sponsorship agreements, and related financial records.

87.    Plaintiffs cannot determine the full amount owed without an accounting.

88.    Plaintiffs therefore seek an accounting of all covered revenue, consideration, benefits, and substitutes for revenue relating to FCS, FloSports, Brand Velocity Group, and any other commissionable event, media-rights agreement, venue agreement, sponsorship agreement, or related opportunity covered by the Consulting Agreement.

## FIFTH CAUSE OF ACTION

### (Quantum Meruit / Unjust Enrichment, in the Alternative)
### (By All Plaintiffs Against Defendant)

89.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 88, inclusive, as though fully set forth herein.

90.    Plaintiffs plead this claim in the alternative to the contract claims.

91.    Plaintiffs provided valuable services to Pop Warner, including services that helped Pop Warner secure, develop, maintain, and benefit from venue, media-rights, sponsorship, and event-related relationships.

92.    Pop Warner knew Plaintiffs expected to be compensated for those services.

93.    Pop Warner accepted and retained the benefits of Plaintiffs' services.

94.    It would be inequitable for Pop Warner to retain those benefits without paying Plaintiffs the reasonable value of their services.

95.    Plaintiffs are entitled to restitution and/or the reasonable value of their services in an amount to be proven at trial.

16

Complaint for Damages

## SIXTH CAUSE OF ACTION

### (Anticipatory Breach and Repudiation, in the Alternative)
*(By All Plaintiffs Against All Defendants)*

96.     Plaintiffs incorporate by reference paragraphs 1 through 95 as though fully set forth herein.

97.     The Consulting Agreement requires Pop Warner to pay Plaintiffs compensation for covered revenue, including compensation payable notwithstanding termination.

98.     Plaintiffs are informed and believe, and on that basis allege, that Pop Warner has continued, renewed, extended, replaced, modified, or otherwise carried forward the FCS relationship beyond the 2025 event.

99.     Plaintiffs are further informed and believe, and on that basis allege, that Pop Warner has refused to acknowledge Plaintiffs' continuing compensation rights and has repudiated its obligation to pay Plaintiffs commissions on post-2025 FCS-related revenue, consideration, benefits, or substituted consideration.

100.    Pop Warner's repudiation is clear, unequivocal, and inconsistent with Plaintiffs' rights under the Consulting Agreement, including the agreement's express provision that compensation remains payable notwithstanding termination.

101.    Plaintiffs do not accept Pop Warner's repudiation and seek damages, declaratory relief, and all other available relief to enforce their continuing rights under the Consulting Agreement.

102.    As a direct and proximate result of Pop Warner's anticipatory breach and repudiation, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

Complaint for Damages

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1.  For compensatory damages according to proof;

2.  For unpaid commissions relating to the FCS relationship, including the 2025 event and all post-2025 renewal, extension, successor, replacement, or modified arrangements;

3.  For unpaid FloSports-related amounts according to proof;

4.  For a declaration of Plaintiffs' continuing compensation rights relating to FCS, FloSports, Brand Velocity Group, and all other covered opportunities;

5.  For an accounting of all covered revenue, consideration, benefits, and substitutes for revenue;

6.  For restitution and/or quantum meruit in the alternative;

7.  For damages arising from Pop Warner's anticipatory breach and repudiation, according to proof;

8.  For pre-judgment and post-judgment interest;

9.  For attorneys' fees under the Consulting Agreement and applicable law;

10. For costs of suit; and

11. For such other and further relief as the Court deems just and proper.

Complaint for Damages

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date: May 27, 2026

Respectfully Submitted,

By:  /s/ Joel S. Schneck
Joel S. Schneck
PORTNOY SCHNECK, L.L.C.
Suite 116
Hamilton, New Jersey 08619
jss@thepslawfirm.com
(609)514-8668

NITIN GAMBHIR (SBN 259906)
LAW OFFICE OF NITIN GAMBHIR
Telephone: 310 486 7996
Email: nitin@nitingambhir.com
(Pending *Pro Hac Vice* Motion)

*Attorneys for Plaintiffs*
*Myers Global Media Strategies LLC and*
*Michael Cain*

19

Complaint for Damages